Thank you, Your Honor. May it please the Court, I'm David Corrigan here on behalf of Debra Ferguson, the former commissioner of the Department of Behavioral Health and Developmental Services. We're on an appeal from an order of Judge Smith from the Eastern District of Virginia, Norfolk Division, which reversed an earlier report and recommendation by Magistrate Judge Lawrence Leonard. The three issues that we're here on, on appeal, the first of which is that the Department of Behavioral Health and Developmental Services really break down to three issues. There's more than those listed, but it actually comes up to three things, which is first, an 11th Amendment question, secondly, the Section 1983 and related qualified immunity questions, and then third, some state law court claims. This case is not a class action. It's a claim by the family of Jermichael Mitchell against Debra Ferguson in her capacity as commissioner of the Department of Behavioral Health and Developmental Services. The timeline is that on April 22nd of 2015, Mitchell was arrested and jailed. On May 11th of 2015, Mitchell was transferred to the Hampton Roads Regional Jail. On May 21st of 2015, a competency restoration order was entered. On July 31st of 2015, more than a month later, that competency restoration order was apparently faxed to the Eastern State Hospital. There cannot be any claim by Mitchell against Ferguson for anything before that date, July 31st, 2015, because Ferguson and the Department do not know and could not have known and are not alleged to have known anything about Mitchell until the fax on July 31st of 2015. Mitchell died on August 19th, 2015, so we're talking about 19 days from July 31st until August 19th of 2015 when the plaintiff alleges that Mitchell should have been in a Department of Behavioral Health and Developmental Services facility. In those 19 days, there are no allegations that Ferguson personally knew of Mitchell, knew of the competency restoration order, knew that a secretary at the Eastern State Hospital named Hart had put the competency restoration order in a drawer, knew that Mitchell should have been placed at Eastern State Hospital, knew of the status of the availability of beds at Eastern State Hospital. In fact, there are no specific allegations on the exact number of beds at Eastern State Hospital or in which area of the facility that open beds existed at that time. So the question becomes, what is the law? The plaintiff cannot sue the Commonwealth of Virginia because of the 11th Amendment, cannot sue the Department of Behavioral Health because of the 11th Amendment, cannot sue the commissioner in her official capacity because of the 11th Amendment. So the plaintiff tries to sue Commissioner Ferguson in her personal capacity, but every single duty or obligation originates from her position as the commissioner. She has absolutely no relationship to Mitchell, a pretrial detainee at Hampton Roads Regional Jail, other than from her position and resulting duties as the commissioner. So our first argument is that this is an official capacity suit. If you look at the allegations in the complaint, it's full of that Mitchell's CRO was disregarded by the Department of Behavioral Health and Developmental Services. The employees engaged in conduct that posed a pervasive risk of constitutional injury because they regularly disregarded CROs and beds were regularly available. The 11th Amendment does apply because the claim is really against the department or the Commonwealth of Virginia. And claims against either are barred. What is alleged is a systemic failure under Ferguson's watch. That's a Monell claim. But since none can be made, the plaintiff recasts it as if Ferguson had specific knowledge while having to admit that Ferguson actually did not. If this is an official capacity claim, then it is, in fact, a claim against the department or the Commonwealth, and any judgment would affect the Commonwealth's purse, and therefore the 11th Amendment immunity applies. We've probably overanalyzed this in a way. At this stage, if the court agrees with our characterization that the claim is solely based on Ferguson's status as commissioner and the claim is an official capacity claim, then the 11th Amendment applies and we win on all counts. I think you better go on to your other arguments, at least as far as I'm concerned. If we're past the 11th Amendment, then we get into the question of a personal capacity claim. And the first question there is whether a Section 1983 claim has been asserted, and then the related question of qualified immunity. We believe two cases are determinative of the law on the Section 1983 claims in this context. Farmer v. Brennan from the United States Supreme Court, and then the Slaken case that the Fourth Circuit decided and that the plaintiff relies on extensively. Under Farmer, the plaintiff must allege that Ferguson, as the head of the department, knew that Mitchell, a pretrial detainee at the Hampton Roads Regional Jail, faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. As language from Ferguson also says in Ferguson, plaintiff must allege that Ferguson knew of and disregarded an excessive risk to Mitchell's health. And states very specifically, Ferguson must both be aware of facts from which the inference could be drawn, that substantial risk of serious harm exists, and she must have drawn the inference. All those are quotes from Farmer. Farmer also importantly says, failure to alleviate a significant risk that she should have perceived but did not, while no cause for commendation, cannot under Supreme Court cases be condemned as the infliction of punishment. We cannot accept Petitioner's argument, they say in Farmers, that a prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious. And a reasonable official would have noticed it. So plaintiff has to allege that Ferguson knew of an excessive risk to Mitchell's health. And here, that would have to be based on an inference that Ferguson knew of the empty beds and waiting lists, plus an inference that Ferguson knew of Mitchell's placement at the Hampton Roads Regional Jail, and an inference that Ferguson knew of the CRO for Mitchell to move from Eastern State, and an inference that Ferguson knew the CRO was not executed, and an inference that Ferguson knew Mitchell would be subjected to substantial risk of serious harm or excessive risk to Mitchell's health at the jail, and Ferguson must have drawn all those inferences. The allegations do not reach the standard from Farmer. It is not a should have known standard, and what has been alleged is not good enough. Plaintiff relies on the Slaken case, where the plaintiff was a prisoner who was subject to high power water hoses while in jail, not just in jail, alone in his cell and no threat to anyone. And in that case, the Secretary of Corrections, who is directly responsible for the jail, is the person who was one of the people who was found liable. And the basis was the use of water hoses against a defenseless prisoner, locked in a one-man cell alone, was excessive force and excessive use of force and a constitutional violation. And the Secretary was responsible because he was responsible for the prison system where this occurred, and he knew that water hoses were being used under those circumstances. It was a systemic problem, right? It was systemic, and... That's what you said, it's a problem here. They're just raising a systemic problem. That was a systemic problem there, was it not? And in that case, it was a systemic problem that was very specific, and it was an aggressive tactic against these prisoners. And this secretary knew, and there's testimony that the warden said that this person knew that these problems were occurring. But this is a problem occurring in the jail, and he's the head of the jail system. So that case, you can understand why it would satisfy Farmer. Here, Ferguson was commissioner of the Department of Behavioral Health and Developmental Services. She's not in charge of the jail. She doesn't have any direct supervision or responsibility for the jail. The allegation as to Ferguson is that as commissioner, she's responsible for supervising and managing the department. That's section 37.2304, a general public duty that she owes to supervise and manage her department. Then the second allegation is under this statute 19.2169.2 that says, upon finding that the defendant is incompetent, the court, meaning the local district court, which happened in this case, shall order that the defendant receive treatment to restore his competency. If the court specifically finds that the defendant requires inpatient hospital treatment, here's the part that affects the commissioner, it shall be at a hospital designated by the commissioner. So the commissioner's job is to designate a hospital. That's all that that statute requires to do. The plaintiff has somehow turned those two statutory obligations into allegations that Ferguson is personally responsible and has a personal constitutional state tort duty to ensure that when an order is entered, the person who's subject to that order is moved into the DBHTS facility, and that if that movement fails to occur, Ferguson is personally responsible for any fate that befalls any individual at a jail over which she has no jurisdiction subject to the order. Slagan provides precedent to find the person who's in charge of the Hampton Roads Regional Jail liable. It just doesn't reach all the way over to the Department of Behavioral Health and Developmental Services. The job was to get the person to a hospital, not to manage what happens once they're in the hospital. I mean, why wouldn't it be obvious that you have a waiting list, yet you have open beds, several open beds? This was 11, right, in that allegation? You've got a waiting list with 34 people on it, and yet you have 100-plus open beds. I think the specifics, as I understood the allegations, the specifics, and it's unclear as to exactly what the timing is, at Eastern State, there were 34 beds and 16 people on the waiting list, or vice versa. I mean, 34 beds, but what about statewide, though? Statewide, there were more than that, but again, if the details are not real specific as to whether or not it applied within this July 31 to August 19 time period, my understanding of the allegations is they're talking about between April and September at various different times. So the inference that they're trying to create is that my client, Dr. Ferguson, was aware that there were beds and that there were waiting lists. It doesn't carry all the way to – Isn't that an appropriate inference, that she would know that? If your job is to make sure that when the court orders the hospitalization of someone, you're trying to restore competency pending trial, that's your job. Isn't it your job to know what your inventory is? It's like somebody running a store. You're supposed to know what your inventory is. Why is that a leak to say it's not obvious that that should be part of your job? Well, I think that first inference is the one that is easiest to make, which is these facts exist, that there is, in her department, there are a certain number of beds and a certain number of people on waiting lists. But to then make any subsequent inference, which you need to make, is that somehow that is a serious medical need or a serious risk of harm to an individual. We already know it's serious. That's established. The court already established that this person is in need of mental health. That's why it's ordered to do so. We don't have to reinvent the wheel here. I mean, we're not asking this person to make a diagnosis on her own, nor to treat, but to do what the court said, to do what the court said. Make sure this person is hospitalized. So it's really not that, I'm not saying it's easy in terms of what the resources are, but what the resources are easy. These are the number of beds that are open, and this is the person who right now needs to be hospitalized. Why wouldn't you know what the beds are available? That's your job. Isn't that your job? Isn't that her job to know what's available? It's like anybody who works in a hospital. You go to the emergency room. It's like saying, well, we don't know if we can fit you or not because we have no idea how many beds are available. Nobody does. Someone does. Every hospital, they'll say, no, you'll have to wait here because there's no bed open. Why is it that obvious that she would know that by the allegation? By the allegation, again, she's the head of the department. She's at an office in Richmond. She has 7,000 employees in her department. It doesn't matter. She has nine hospitals. She has 6,000 people who are receiving services. That's fine. And people are put into jail, and for whatever reason or then there's a suggestion that they need to go into a mental health capacity, but they're not. That's a suggestion. Well, and there's orders, and there's orders, and sometimes it happens in various different ways. In this case, obviously, we're talking about an order. So the order occurs, but it's not a constitutional violation for a person who is already in jail and receiving, there's no indication, unconstitutional treatment in jail is not moved quickly enough because that's what they're suggesting is that every person who has an order who isn't moved immediately is being treated unconstitutionally and has a claim against the head of this department, even though they're in a jail that she has no responsibility for. So it just takes several leaps of logic in my mind to get from someone over here in a jail and suggest the head of this department. You're doing a bit of moving around shell game yourself because you talk about she's not responsible for the jail. You're right. Then you say, well, she's not responsible for the hospital. You're right, but it makes no difference. Her job is to make sure that this person who is in jail now in order to be hospitalized goes from the jail to a hospital bed. That doesn't require her to be responsible for the jail, nor the hospital. It's a matter of transferring. That is her obligation. I don't understand why it's so difficult and not obvious to her or anybody else in that position what the available beds are. It might be, but that's for defense. But at this point, they're saying there's overwhelming numbers of beds available. But it doesn't show that she acted with deliberate indifference, that she acted on the inference. It does show, in fact, that that's the case, that she knew about it. And she was keeping people on the waiting list when there were beds open. The allegation is that those facts existed with respect to empty beds and with respect to the list. And then you have to leap from there to that she acted on that in failing to deal with this specific individual in this specific time frame. I just don't think that the allegations reach that. Thank you. Thank you. May it please the Court, Mr. Chief Justice, excuse me, Mr. Chief Judge Gregory, Judge Motz, and Judge Traxler. My name is Jack Price. I represent Roxanne Adams, whose nephew, Jemichael Mitchell, tragically died after being lost in Virginia's mental health system. Like they, Your Honor, I think there are three issues in this case. We think there is actually a difference on one of the issues. The three issues here are, first, appellate jurisdiction. I'm going to hold that for a bit and follow up on the focus on deliberate indifference. But the other two issues are sovereign immunity and the merits of the constitutional claims. Let me start with the merits of the constitutional claims. I think it's crucial to understand that in their brief, their reply brief, page 7, they basically acknowledge that Commissioner Ferguson would have had knowledge of the waiting lists and empty beds. Would have had knowledge. They do not challenge that knowledge at all. What their argument is, is that there's no way that connects to Mitchell. And so I can put this out most easily in a hypothetical to see why that doesn't matter. If somebody walks into the Commissioner's office and says, Commissioner, we've got a problem. What's the problem? We've got waiting lists and empty beds. Well, how bad is the problem? Well, the problem includes 34 open beds at Eastern State Hospital, but there's still a waiting list. Statewide, there's 176 beds available, but there's always a waiting list. That's over the entire summer. And so she says, well, I don't know who these people are on the waiting list. I don't know Mitchell. Is that okay? We can say that's okay for a Commissioner who has an obligation to uphold the Constitution, say, well, I don't know who Mitchell is. And then could the Commissioner also say, well, even if I knew Mitchell, I don't know who actually failed to process this order. I don't know exactly what the beds look like at Eastern State. Now, it could be that the Commissioner did something that yet we don't know that might suggest she made a reasonable response. The reasonable response is what heads off his suggestion, that if you buy her argument, then she will be liable for every time there's a failure to transfer. We're not arguing she'd be liable for every time there's a failure to transfer, and this Court doesn't need to hold that. It simply needs to hold that when there's a systemic failure, the head of the system is answerable for those failures. When there's a systemic failure, it's completely – Is my lack of knowledge going to be liability for a systemic failure? I think she's – I think, first of all, Your Honor, there's two types of knowledge – not two types, but two attributes of knowledge we need to focus on. First, the knowledge of waiting lists and empty beds. They've, I think, essentially conceded that point. As I understood what you said, if there's a systemic failure, the head of the department or organization or whatever is going to be liable. And I don't know how you can say that without determining what knowledge that person had. Yes, I think it would depend on the nature of the systemic failure. If the systemic failure is something that deprives people of mental health care and they're in jails, then – So you're saying there can be liability with no knowledge? Oh, no. Certainly they have to have knowledge. I guess my point would be is if someone says to the commissioner, Commissioner, we have a systemic failure with regard to people who are entitled to medical care not receiving medical care. It is our job to make sure they get that care. At that point, if that knowledge exists, that's a constitutional violation unless – given there's no reasonable response. That becomes a question of reasonable response. Maybe I can focus a bit more. So you – we're trying to sort of tease out what – Sure, Your Honor. So what you're saying is you don't need knowledge that it's your client? No, certainly not. The case – the court addressed this in Farmer v. Brennan. The court said, yeah, you have a duty to protect people that you reasonably think could be at risk. You don't need to know exactly who's going to do the attacking. You don't need to know who exactly is going to be attacked. If you know there's 100 people – Help me with the facts here. I thought that her underling, in fact, put all these reports in the desk drawer and never told her about it. Yes, but the reason that these waiting lists exist is just not because of the underlings putting them in the desk drawer. So there's a couple instances. Even if they were, she doesn't need to know exactly what the nature of the problem is. In other words, the court need not find that when she said – I'm speaking rhetorically here. I don't know this happened, but for the purpose of illustration. If she's aware of waiting lists in empty beds, it's at that point incumbent upon her – So if she's aware of them, she doesn't get the report from her underling because it's in the desk drawer. Excuse me. The report that was in the desk drawer was actually the transfer order. Okay. And there were many transfer orders. Exactly, but that's not the report she would get concerning the waiting list in empty beds. Okay. And if there's any doubt, Your Honor, on the nature of knowledge here, Slakin, which we both rely on, says, and here's a quote, State statutes fixing the administrator's legal duties provide a useful guide in determining who had the responsibility and capability to end the offensive practices. Commissioner Ferguson began in the middle of 2014. In 2014, either just before she started or right after she started, the Virginia Assembly required her to create an acute psychiatric bed registry because of the significant problems with people not receiving care. The court might remember, say, Senator Cree Deeds. His son committed suicide. It was an enormous issue across the state. The state legislature responds. Here's a statute. In addition to that, she is required to report her findings on the nature of the bed registry, how it's going, every year on June 30th. While Jemichael Mitchell was in jail, she was reporting to them on the nature of that. There can't be any doubt here that she was aware there was a problem with beds and filling those beds. There also can't be any doubt here that when the reason people were going to be moved to these hospitals is because a doctor determined they cannot receive the care that they need where they are. That's a doctor's decision that they need some other medical care. Eco versus Shreve, a Fourth Circuit case frequently cited on deliberate indifference in prison context, says how do we know what a serious medical need is? It is a need that has been diagnosed by a physician as mandating treatment. So people say these people need to go to a hospital. If you have that knowledge, you need to do something to help them get them there. It is unimportant that she knew about Mitchell himself. A couple more points here, Your Honor. I'm sorry to interrupt. No, no. Go ahead, Judge. I want to make sure I understand your position. Your basis for asserting liability against her is based on the fact that she knew there were empty beds and a waiting list. Yes, Your Honor. Anything other than that. I think it's fair to say that these waiting lists and empty beds pertain to people who had mental illnesses in jails, which is a reasonable inference to make. Also, just as reasonably, I might add that this is not people going in to have their tonsils out. Mental illness is an extraordinary problem in the jails in Virginia. Your position is that it is irrelevant that she had no knowledge of this particular inmate. Yes, it is irrelevant that she had no knowledge of him. Your Honor, I'll point this out and then move to some other issues. In Slaken v. Porter, the court speaking about supervisory liability. I'm sorry to interrupt you again. I said something wrong. That's okay. Go ahead, Your Honor. For my purposes. It's also irrelevant that she had no knowledge of this particular inmate and his situation. She doesn't need to know that Mitchell was one of these people on a waiting list. A commissioner couldn't certainly say, well, don't show me their pictures because then I might have to do something. So let's just assume for a moment here that you have alleged a constitutional violation. Then you know you have to point us to a case where it says that that violation was clearly established. Yes, Your Honor. There's several cases I'd like to point to on the issue of qualified immunity. We know all about how it has to be with specificity. Yes, Your Honor. And I can address their points on specificity as well. So turning to the issue of qualified immunity and maybe just proceeding from the hypothetical that someone says, Commissioner, we've got waiting lists and empty beds. And the commissioner says, well, I need to figure out what to do so that I'm in compliance with the Constitution. I'll pull out the federal reporters and see what I can find. The first thing she would find would be Eco v. Shreve, which says if someone has been diagnosed as needing treatment, that is a serious medical need, period. So there can be no doubt in her mind. There's clear law that the people on this list had serious medical needs. Second thing she would find, Farmer v. Brennan. Farmer v. Brennan says, of course, it contains the deliberate indifference standard, but it also says you need not know who the specific person is. Yes, Your Honor. And then the other thing she would find is Slakin v. Porter. Slakin says up to the very highest levels of government can supervise reliability run, up to the very highest levels. And so I guess another case that I might mention is Connor v. Donnelly. They make a point of saying she's not a prison official. Connor v. Donnelly is a Fourth Circuit case that we cite, which says that a private physician in a private hospital has a duty under the Eighth Amendment. So there can be no doubt that the fact that she's not a prison official means that she is somehow immune. So those three cases are, frankly, enough on their own to apprise her of the duty to do something. I might also add, I'm sure what this Court is aware of, that there need not be a case precisely on point. The case, excuse me, a commissioner or a defendant in this case can be put on notice through, I'm losing track of the language from the case. Forgive me, Your Honor. Need not be a case precisely on point, but it's enough that it fits within the general parameters underlying the key law. There are two or three points they make in return on qualified immunity. On page 15 of their reply, they, in a 175-word sentence, specify the proper standard for qualified immunity. Your Honor, I'm not picking at them for a 175-word sentence. I'm sure I write some long ones myself. But the point is this. Yes, qualified immunity must be pitched at a high level of specificity. They pitch it in almost an unwinnable level of specificity. So, for instance, first point they say. She did not know that inmates awaiting transfer would be abused. That's irrelevant to our claim. We argued before in the lower court that she may be responsible for abuse. Completely irrelevant. We dropped that. So I came up with what I thought might be. You tell me what case supports this proposition. Whether it was clearly established that mismanaging the available bed space in state mental health facilities constitutes deliberate indifference to a prisoner's significant medical need. I might specify it a bit further than mismanagement. I might say just because mismanagement could be not fully using resources, I might say is it clearly established that one who is aware that a group of inmates, because of mismanagement of a hospital system, are being denied care that they are entitled by law to receive. That tells me that that would constitute a constitutional violation. I guess I would return to both Farmer and Slaken. If you don't have any other cases. I don't have any other cases. If you don't have anything about mismanaging the available bed space. Yes, I don't. Your Honor, though I would note that Slaken is about mismanaging your subordinates. The Supreme Court keeps telling us again and again. You have to do this with the appropriate level of specificity. Your Honor, that's true. But I would point very specifically. They say that in Fourth Amendment context, most often with excessive force. And that's where you do run into a situation, as we saw in this morning's first argument. This is not a situation where a commissioner was asked to make a split-second decision on whether to shoot a dog. This is a decision that she got to make from her office to think about one way or the other. The case for that is Mullenix v. Luna, Your Honor, from two or three terms ago. The Supreme Court says this high level of specificity is crucially important in Fourth Amendment cases. In other cases, in this Court and in the Supreme Court, there's far less level of specificity that's demanded. Your Honor, I have a couple minutes left. I want to address two issues. One in particular is this Court's appellate jurisdiction. The court below decided in favor of the plaintiff in this case on state law claims. They have asked this Court to review those state law claims and reverse the district court. This Court has absolutely no jurisdiction over that. As you know, Your Honor, Your Honors, this Court has jurisdiction normally over final judgments. There's no final judgment here. It can take jurisdiction sometimes over collateral orders. The state law claims do not fit into the collateral order doctrine because they are the merits of the state law claims. The collateral order doctrine are for issues collateral to the merits. So collateral order doctrine doesn't work. The only thing left is pendant appellate jurisdiction. They have not addressed pendant appellate – well, they didn't address it in the opening in their – I cannot remember if they addressed it in their opening brief. He didn't address it here. Absolutely no argument for pendant appellate jurisdiction here. Very briefly, I can mention why. Your Honor, may I grab my pad? I changed my notes before coming in here. I left them on my pad. The quickest and easiest way to analyze pendant appellate jurisdiction is to think of the issues that are within this Court's permissible jurisdiction as it is and cases that someone – excuse me, issues that want to be dragged in pursuant to pendant appellate jurisdiction. The issues that this Court can hear right now are federal sovereign immunity, federal qualified immunity, and federal constitutional claims.  They're asking this Court to drag in, using its pendant appellate jurisdiction, state common law claims. Okay? The only two ways in which that could happen are if, first, if this Court decide – when the Court decides state law issues, that will necessarily resolve or help this Court resolve federal sovereign immunity, federal qualified immunity, federal constitutional claims. Resolving negligence or gross negligence will in no way assist this Court in determining these issues of federal sovereign immunity, qualified immunity, or constitutional claims. The only other ground for pendant appellate jurisdiction is if deciding federal sovereign immunity, qualified immunity, or the constitutional claims itself resolves the state law questions. If for some reason the Court's decision on one of those federal issues immediately automatically resolved the state law claims, then the Fourth Circuit has held, well, we'll just jump and resolve that quick issue. But that doesn't happen. The key reason, the simplest reason maybe, to see why this fails for pendant appellate jurisdiction is because they are trying to tack on state law claims to federal claims. There is – I couldn't find a case where pendant appellate jurisdiction crossed the sovereign law, where you had state claims being pendent to federal, federal being pendent to state. Absolutely no jurisdiction in this Court. Should decline jurisdiction over that and return the case to the district court. Mr. Price, I noticed that there are a lot of other plaintiffs here. Where are those cases? A lot of other plaintiffs? Yes. Oh, you mean defendants. Defendants. Defendants. Those cases are all part of this same case. I understand that, but they're pending in – The final issue, if I could address briefly, the argument that this is sovereign immunity contradicts Supreme Court precedent. There's undeniably a violation of Supreme Court precedent. Time and time again, the Supreme Court has said, here's how we figure out sovereign immunity when you sue someone in their individual capacity. Well, frankly, they say if you're suing in your individual capacity, there's basically no sovereign immunity. The only way in which an individual capacity claim could possibly implicate sovereign immunity is if we, the plaintiffs, seek money from the officer herself. We do not seek money from the officer herself. I might suggest that the court – the case they cite to, Martin v. Wood, is not on point in several different ways. But most importantly, it would directly contradict Shurer v. Rhodes. The governor of Ohio, after the Kent State shooting, was sued for violating people's constitutional rights. And he said, you can't sue me. I'm the governor of the state. I'm the sovereign. I have sovereign immunity. The Supreme Court said, no, you lost your sovereign immunity when you acted ultra viris. We allege the commissioner acted ultra viris. Like the governor of Ohio, she has entitlement to qualified immunity. She acted ultra viris by doing nothing? She – Is that what you're saying? Yeah, I think if the Constitution requires you to do something and you disobey the Constitution, you have acted outside your authority. And what did the Constitution require her to do?  I understand what your argument is. Yeah. Thank you. You don't want any money damages? What is this $50 million? We do want money damages, but not from the state itself. We want it from her. Okay. Excuse me, Your Honor. Thank you for correcting me. I apologize. Yeah. We want it from her. With that, Your Honor, unless there's any further questions. All right. Thank you. Thank you. Mr. Corrigan, you have some time reserved. Yes, sir. So I think I'll start with the whether there's a constitutional violation. Actual knowledge is essential to the proof of deliberate indifference, because the officials who lack knowledge of a risk cannot be said to have inflicted punishment without actual knowledge. And that's the second part of the test in Farmer. It's not a should-have-known standard. It has to have known and knowingly done it. And in this instance, the serious medical need piece, we don't think it applies there. She did not have knowledge of serious medical need, and there's no evidence of validation. I'm sorry, Farmer, don't say should have known. Known or should have known. But the second part of the test is she has to have acted on the inference. So you get there on the first part, but the second is the objective part and then the subjective part. And the subjective part is the actor has to have known. And remember, these are people who are in jail, and the standard is this has to be punishment. It can't be the conditions of confinement are inadequate. That is not what this is about. The case of Sharp versus South Carolina, Department of Corrections that we cite, Adams must. I don't mean that, Mr. Farger. That has to be punishment, but it is deliberate indifference to medical need, not punishment. Rising to the level of punishment, though, is the standard that they talk about. It's not simply negligence. It's not a negligence standard. It is a deliberate indifference standard. Absolutely, but you're indifferent to the need, clearly established medical need. And here that's established, the need, correct? You have to conceive that. I don't have to conceive that. You don't have to conceive that. Respectfully. You have an order from the judge, from the court, saying this person needs to be transferred into a mental hospital because of an acute mental problem, and you don't have to conceive that that's established as a serious medical condition. I think the point is this. The person is already in the jail. There's going to be some period of time that the person in the jail is going to be in the jail. So the idea that there's a serious medical need that is a constitutional violation at that moment, the jail has responsibility for looking after the people as well. What you're doing is adding a whole bunch of facts or suppositions to what Judge Gregory said to you. But you conceived that there was a medical need here, right? There's a medical need, yes. Now, the question of the seriousness of it and whether it's a constitutional violation, I think, is the point we're making. You have to infer that she knew that something bad was happening to these people in the jail in order for her to have violated the former standard. You know what's bad? What's bad is that their minds were so disconnected, disjointed, that they couldn't help their counsel or themselves proceed in a court of law for their prosecution. And we have a lot of high things, Sixth Amendment, all those rights. That's why it's acute and it's a need. I understand, Your Honor. You have to be pretty serious with it. I understand, Your Honor. You just disagree. I do. I do disagree. What do you disagree with? I disagree that it is a constitutional violation when someone is in a jail, which has responsibility for caring for them, including their medical needs, and that they don't move quickly enough to the other location. But I don't want to get bogged down on that because I think we disagree on that one. I think the qualified immunity, Judge Motz, your question is closer to the line of what we're suggesting. He keeps saying the IKO case, I-K-O is the name of the case. That's a case where some correctional officers pepper sprayed an individual and then they didn't provide him with medical care, and they said, You knew he needed medical care? These people are right on the scene, right there. And to suggest that that case provides Deborah Ferguson with some level of knowledge of the standard. Well, let's phase out why you think that this case is novel. Is it because the defendant is not in the prison? Is that why you think it's novel? I think it's novel for a host of reasons. Well, name the top three for me. The top three are. You have a host, so that means to be a factor. Sure. She is the head of a department, Department of Behavioral Health and Developmental Services, and the individual is in the Hampton Roads Regional Jail. But those are just facts. I'm getting a principle to apply to the next case. Presumably you would say if it was dealing with another official in another jail, it just wouldn't apply. So that can't be the principle that you're looking at. The principle is that she's the head of this department, and she has no knowledge that what they've alleged, there's no case that has ever said that the head of the Department of Behavioral Health and Developmental Services can be liable for someone who is in a jail and not transferred for mismanagement of bets. Are you saying that somebody in her position had to know and have responsibility for the person in jail in order for there not to be qualified immunity? Well, I think it needs to be extremely particularized, yes. Well, I understand particularized. I'm trying to get you to tell me what the case says, and it can't be that particularized. Because as you've told us, there are lots of jails in the state of Maryland, and there are lots of hospitals. Right, and there are. And I guess what I'm saying is, along the lines of what the court was saying, that the specifics here are that he's in this jail, and she's at the head of the department. And that there's no connection. The mismanagement of beds, there's no case that talks about mismanagement of beds. There's no case that talks about a non-prison official or someone who's not in charge of a prison. There's just no case that I'm aware of, and they certainly haven't cited to it. And the ones that they rely on, ECO, is actual correctional officers in the jail. Well, actually, I think there are cases about doctors employed by prisons. Sure. So there aren't prison officials, if you will. Right. But I don't think that's the point I'm making. She's the head of a whole separate department. That's what I'm trying to say. And the doctors are caring for the individual, so there's a much closer relationship. It just takes a number of inferences to get from this individual in the jail all the way to the head of the department. We didn't get to the state court claims. We believe there is jurisdiction. We believe that sovereign immunity was raised, not in any detailed manner, but it was raised. The plaintiff has indicated that if we had raised it more completely on page 14 of their brief, it would have been an issue appropriate for you. We believe that sovereign immunity, raising it under the 11th Amendment, brings in the state court claims, and we also think that the public duty doctrine, which we talk about, is a form of immunity that we did raise below and here, and that therefore... Has the Virginia Supreme Court ever so held? So held. That the public duty doctrine is a form of immunity? That has not been said in that manner, no. So we argue that there is no duty and that the state court claims should be considered as well. Thank you very much. All right. Thank you, counsel. We'll ask the clerk to adjourn the court for the day and come down to the table.
judges: Roger L. Gregory, Diana Gribbon Motz, William B. Traxler Jr.